**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SHERMAN HORTON LANE,       ) | |
| )                            | |
| Plaintiff,          ) | |
| )                            | |
| v.                                                 ) | Case No. 04-CV-683-CVE-PJC |
| )                            | |
| PFIZER, INC.,                                ) | |
| )                            | |
| Defendant.      ) | |

### ORDER AND OPINION

This matter came before the Court for hearing on the motion of Defendant Pfizer, Inc. ("Pfizer"), to compel a medical examination of the Plaintiff pursuant to Fed. R. Civ. P. 35. [Dkt. # 41]. For the reasons set forth below, the motion is **GRANTED**.

*Factual Background.*

In 2004 Plaintiff Sherman Horton Lane ("Lane") was an employee of Pfizer when he claimed short term disability due to mental health issues. Pfizer referred Lane to Unival, an independent health care organization which arranged for an independent medical examination ("IME") performed by Dr. Mark Kelley of Tulsa, Oklahoma, in June 2004. Lane was determined to be suffering from depression, anxiety and bipolar disorder. He was found to be disabled and has received disability benefits ever since.

In September 2004, Lane filed the instant lawsuit alleging race discrimination in discipline and promotion practices in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. [Dkt. # 2]. Plaintiff claims he has suffered emotional distress and mental suffering as a result of Pfizer's conduct. The parties agree that Lane is seeking compensation for more than so-called "garden variety" emotional distress, i.e., the normal distress that would flow from an unpleasant experience. Here,

Lane contends that his mental/psychiatric conditions – diagnosed depression, anxiety and bipolar disorder – are the direct result of Pfizer's conduct toward him.

Pfizer seeks to have an IME performed to evaluate Lane's claim that his mental problems were caused by Pfizer. Lane objects to Pfizer's request on the ground that Pfizer had an IME performed by Dr. Kelley in 2004 and the company has not established good cause for a second examination.

*Legal Standard*

Rule 35(a) provides:

> **Order for Examination.** When the mental or physical condition … of a party … is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner…. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made.

Generally, a medical examination such as this is arranged by stipulation of the parties. Rule 35 serves as a mechanism to enforce a request for examination, when appropriate, if the parties cannot or will not so stipulate. 8A Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2234 (1994). An order for examination is not granted as a matter of right. When contested, it is addressed to the Court's discretion. *Id.* at 478-79. The moving party must show that the condition to be examined is "in controversy" as well as that good cause exists for the exam. Often these two requirements are addressed as one inquiry. *Bethel v. Dixie Homecrafters, Inc.*, 192 F.R.D. 320, 322 (N.D.Ga. 2000) (noting that the factors reviewed in determining good cause often merge with the requirement that the claimant's mental condition be in

2

controversy.). In addition the Rule requires that proposed exam be conducted by a "suitably licensed or certified examiner."

### *Discussion*

Before addressing the specific requirements of Rule 35, the Court will first address Plaintiff's contention that Defendant has already had an IME performed on Lane and should be barred from seeking another. However, the IME performed in June 2004 by Dr. Kelley was performed to determine Lane's entitlement to Short Term Disability benefits and the award of benefits was not dependent on whether Pfizer *caused* Lane's disability. Thus, the purpose of the 2004 examination was different from the IME proposed today. Furthermore, it was not until Lane filed his lawsuit in September 2004 – three months after Dr. Kelley's examination – that Lane asserted mental injury caused by Pfizer. This new issue – causation – will be a major focus of the proposed IME.

Plaintiff's reliance on *Meadows v. Home Depot USA, Inc.*, 2002 WL 70364 (D.Kan.) is not well taken. In *Meadows* the court discussed when a plaintiff may be subjected to a second IME in the course of litigation. In that case, the court granted Defendant Home Depot's request for a Rule 35 exam of the plaintiff. Home Depot chose one of the plaintiff's treating physicians to conduct the exam. At that time, Defendant Larson was not a party to the lawsuit. After Larson was added to the case he requested an IME by a different doctor. Larson indicated he would have objected to the first IME by Plaintiff's treating physician because he wanted a truly independent medical exam. The court found good cause for the second IME since Larson had had no choice in the selection of the doctor who performed the first IME and "it would be unjust to bind

Larson to Home Depot's selection of a treating physician to conduct the examination." *Id.* at *2.

*Meadows* concerned a second IME within the course of one lawsuit. Here, the first exam was conducted before any lawsuit was filed. The IME requested by Pfizer is the first IME of Lane *in the course of this lawsuit*. Furthermore, the purpose of the first IME – to determine Lane's eligibility for disability benefits – is not the same as the purpose of the proposed examination. Here Pfizer wants to explore the cause of Lane's mental illness. For these reasons, the proposed IME is not precluded by the June 2004 examination by Dr. Kelley.

The Court must now determine whether the requirements for an IME are met in this case.

### A. "In Controversy" Requirement.

There is no question that in this case the Plaintiff's mental condition is in controversy. At the hearing held January 24, 2007, Plaintiff's counsel admitted that the emotional distress/mental suffering damages Lane seeks are not garden variety emotional distress damages and that Lane contends his mental problems are the result of Pfizer's conduct. Based on this admission as well as the record evidence before the Court, it is clear that Lane's mental condition and the cause of that condition are in controversy.

### B. Good Cause.

As the Court noted above, the "in controversy" and "good cause" requirements often merge into one test. *See, for example*, *Eckman v. Univ. of Rhode Island*, 160 F.R.D. 431, 433 (D.R.I. 1995). ("Where a plaintiff has affirmatively placed in controversy her mental condition, it is appropriate for a court to order an examination."). Where plaintiff

identifies a specific mental condition he claims was caused by defendant's conduct, mental condition is in controversy and good cause exists for an examination under Rule 35. For example, in *Simpson v. University of Colorado*, 220 F.R.D. 354 (D. CO. 2004), a student alleged that she suffered from post-traumatic stress disorder as a result of sexual harassment she had suffered in the university's athletic department. The court found that because Plaintiff claimed a specific psychiatric disorder and indicated her intention to offer expert testimony on the subject, good cause existed for a medical examination. *Id.* at 362.

Plaintiff here has not identified an expert on the issue of his mental condition although there have been multiple deadlines to do so. *See* Dkt. ## 14, 20, 34 & 39. However, even if Plaintiff decides not to call an expert witness, this does not preclude an IME by the Defendant. Good cause for an examination by Defendant can exist even when Plaintiff offers no expert testimony. In *Ali v. Wang Laboratories, Inc.*, 162 F.R.D. 165 (M.D.Fla. 1995), the court noted:

> While plaintiff may be content to offer only his own testimony to a jury, defendant is not compelled to limit its case to mere cross examination. Since plaintiff's mental condition is in controversy and substantial damages are asserted, it is essential for defendant to have the reasonable opportunity to challenge plaintiff's claim and testimony. The testimony of an expert is a well recognized and reasonable way of doing so, and an examination of plaintiff by that expert is necessary for the expert to form a meaningful opinion.

*Id.* at 168 (citation omitted).

Plaintiff's mental condition is in controversy and good cause exists for a mental examination.

**C. Examination by a Licensed/Certified Examiner.**

Rule 35 requires that any examination be conducted by a suitably licensed or certified examiner. Defendant proposes an examination encompassing "general psychological testing based on the available medical records and complaints of Plaintiff." *Defendant's Motion*, p. 5. Defendant has offered the names of two possible examiners: Dr. J.A. Montero, a psychiatrist, or Russell Adams, Ph.D. of the University of Oklahoma Health Sciences Center Department of Psychiatry and Behavioral Sciences, apparently with the idea that if the motion were granted the parties could agree on one of these examiners. Plaintiff has asked that if Pfizer's motion is granted he be given a full curriculum vitae of the proposed examiners in order to determine their acceptability.

*Conclusion*

The Court finds that Defendant has established legal grounds under Fed. R. Civ. P. 35(a) for a mental examination of the Plaintiff. By January 31, 2007, Defendant shall provide Plaintiff's counsel with the curriculum vitae of Drs. Moreno and Adams. The parties will then confer as to who should conduct the IME. If the parties are unable to so agree, they may file an appropriate request for the Court's assistance. The cost of the exam as well as Plaintiff's travel expenses to Oklahoma City shall be borne by Pfizer. Upon completion, a copy of the examiner's report shall be produced to Plaintiff. Pfizer apparently intends for the examination to take place in Oklahoma City. The Court has been given little guidance as to the manner, location, and scope of that exam and, thus, cannot fashion a precise Order under Rule 35(a). Therefore, details as to the timing of the exam and its scope will be left to the parties. *See Doty v. Zimbelman*, 1997 WL

728120, 1 (D.Kan.).  If agreement cannot be reached, either side may seek the Court's assistance.

IT IS SO ORDERED this 25th day of January 2007.

Paul J. Cleary
United States Magistrate Judge

7